Argued and submitted September 30, 1998, vacated and remanded for reconsideration March 17, petition for review denied July 20, 1999 (329 Or 126)

Diana M. JOHNSON, M.D.,
*Appellant,*

*v.*

EUGENE EMERGENCY PHYSICIANS, P.C.,
an Oregon professional corporation;
and Michael Barkman, M.D.,
*Defendants,*

*and*

PEACEHEALTH,
a Washington non-profit corporation,
dba Sacred Heart Hospital,
*Respondent.*

(16-96-00768; CA A97719)

974 P2d 803

Kathryn H. Clarke argued the cause and filed the briefs for appellant.

Robert D. Lowry argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Plaintiff appeals a judgment dismissing her complaint with prejudice for violation of a protective order. We vacate and remand for reconsideration.

Plaintiff is an emergency room physician. In 1993, she became a shareholder and employee of Eugene Emergency Physicians (EEP), a professional corporation that provides emergency medical services at Sacred Heart General Hospital, operated by Peacehealth (defendant). In January 1995, EEP terminated plaintiff's employment, and she lost staff privileges at the hospital. In plaintiff's ensuing action,[1] she filed a motion to compel Sacred Heart to produce a copy of her medical staff file. The trial court issued an order compelling discovery, which provided that

> "disclosure shall be subject to the following protective order: all such documents (and any copies) shall be returned to counsel for Defendant Peacehealth at the conclusion of this litigation, including any appeal, and shall not be disclosed to any person except for the limited purposes of trial preparation, and except to the extent admitted at trial."

Sacred Heart sought a limitation on the order to produce and, after an *in camera* inspection, the trial court modified its original order to exclude certain documents that were then placed under seal in the trial court file. In January 1997, plaintiff moved to compel production of the remaining documents in her file. That motion was denied.

Plaintiff knew that Dr. Barkman and a nurse manager had complained about an incident in which plaintiff had ordered the restraint of a patient in the emergency room. Plaintiff had been told by Dr. Kehn, the chief of staff at Sacred Heart, that he had decided "not to proceed with an investigation" of the complaint and that her staff privileges

---

[1] Plaintiff's original complaint, filed in April 1995, was against EEP, Peacehealth and Dr. Michael Barkman alleging claims for wrongful discharge, defamation and intentional interference with economic relations. In December, plaintiff's action was voluntarily dismissed with prejudice as to EEP and Barkman and without prejudice as to Peacehealth. In January, plaintiff filed a new complaint against Peacehealth.

were "in good standing." Plaintiff also knew that, in the fall of 1995, she had been denied a position with another hospital emergency department, amid inferences that her medical staff file at Sacred Heart included allegations of patient cruelty. Plaintiff suspected, but did not know, that those allegations might have originated with the complaints, despite the reassurances given to her. After receiving her staff file, plaintiff's suspicions were confirmed, and she amended her complaint to allege, *inter alia*, that defendant had violated her due process rights by conducting an investigation without giving her notice and an opportunity to respond.

Shortly after receiving her file in July 1996, plaintiff wrote to the Oregon State Board of Medical Examiners, complaining that Dr. Kehn had engaged in unprofessional conduct. She did not submit documents with her letter. The Board subsequently notified plaintiff that her complaint was not within the Board's scope of review. However, during plaintiff's deposition in August 1996, defendant discovered that plaintiff had filed the complaint with the Board. During the deposition, plaintiff stated, "There are other means to address dishonorable and unprofessional contact aside from the courts. * * * [To t]he Medical Board." Plaintiff further stated that she "had good documentation to show that Dr. Barkman had produced documentation in bad faith and with malice," but she refused to explain further, claiming that her complaint to the Board was "a protected document under [ORS] 41.675."

In March 1997, defendant filed a motion to dismiss under either ORCP 46 B(2) or ORCP 54 B(1), or, in the alternative, for other sanctions, on the ground that plaintiff had violated the court's protective order. Following a hearing, the court granted defendant's motion and entered a judgment of dismissal with prejudice.

Plaintiff first assigns error to the trial court's entry of the judgment of dismissal. Under ORCP 54 B(1), a defendant may move for a judgment of dismissal of an action "[f]or failure of the plaintiff to prosecute or to comply with * * * any order of the court." Our review of the court's ruling under ORCP 54 B is for abuse of discretion. *See Lambert v. American Dream Homes Corp.*, 148 Or App 371, 375, 939 P2d 661

(1997) (review of dismissal for want of prosecution is for abuse of discretion).[2]

At trial, the parties and the trial court assumed that the standards applicable to a sanction for a discovery violation under ORCP 46 B(2) are also applicable to ORCP 54 B(1). *See Lambert*, 148 Or App at 375-76 (applying same standards articulated in the context of ORCP 46 B(2) to dismissal under ORCP 54 B(1)). On appeal, the parties do not argue that ORCP 54 B requires a different analysis. We address the issues as the parties frame them.[3] In *Pamplin v. Victoria*, 319 Or 429, 877 P2d 1196 (1994), the Supreme Court explained the parameters of the court's exercise of discretion for a dismissal under ORCP 46 B(2)(c). The trial court must make findings of fact and explain why the sanction of dismissal is "just":

> "[A] finding of willfulness, bad faith, or fault of a similar degree on the part of the disobedient party is required; and * * * a finding of prejudice to the party seeking discovery is not required." *Id.* at 437.

---

[2] At the outset, we reject plaintiff's argument that she did not violate the protective order because she did not reveal the documents. For plaintiff to argue that the order prevented disclosure of the documents but allowed disclosure of the contents of the documents defies the clear import of the order. We likewise reject plaintiff's contention that ORS 677.425 and ORS 677.335 prohibit the dismissal sanction imposed here. At that time, ORS 677.425 provided:

> "(1) Any information provided to the board of Medical Examiners for the State of Oregon * * * is confidential and shall not be subject to public disclosure, nor shall it be admissible as evidence in any judicial proceeding.

> "(2) Any person who reports or provides information to the board under ORS 677.205 and 677.410 to 677.425 and who provides information in good faith shall not be subject to an action for civil damages as a result thereof."

ORS 677.335(2) provides:

> "No person who has made a complaint as to the conduct of a licensee of the [Board of Medical Examiners] or who has given information or testimony relative to a proposed or pending proceeding for misconduct against the licensee of the board, shall be answerable for any such act in any proceeding except for perjury committed by the person."

Plaintiff's argument sets the issue askew. Plaintiff is not being held "answerable" for making the complaint; she is being held "answerable" for violating a protective order.

[3] *But see United States v. Shaffer Equip. Co.*, 11 F3d 450, 462 (4th Cir 1993) (listing six factors considered when reviewing a dismissal, including prejudice to the victim).

Here, the court found that plaintiff's violation was intentional and that the

> "likely motivation was a personal animosity toward the target of her complaint to the Oregon Medical Board of Examiners, evidencing bad faith. Basically, she knew of the protective order, and shortly after her receipt of the protected documents from her attorney, chose to ignore it and use the information in those documents for her own purposes."

The court also found that plaintiff's

> "violation was extremely damaging to both institutions affected by that violation, namely, the court and Sacred Heart General Hospital. The damage to the hospital is that the security and confidentiality of its peer review process has been compromised, and doctors and staff may well be more hesitant about reporting perceived problems than before this disclosure occurred. The damage to the system is amply described in the authorities set out in Defendant's memorandum in support of its motion."

■     Plaintiff challenges both those findings, contending that the only evidence before the court was that she believed that her complaint to the Board was completely privileged and that she could communicate with the Board so long as she did not reveal the documents. Plaintiff's argument is disingenuous in the face of the evidence that supports the court's finding that she was aware that the order applied to the document contents, chose to interpret the order contrary to that proscription in order to retaliate for her perceived mistreatment, and then sought to excuse her action by a claim that her disclosure was professionally required.[4] We also reject plaintiff's contention that the court could not find prejudice because Sacred Heart admitted that it had not been prejudiced. The prejudice that resulted to the medical and legal systems is evident from plaintiff's deliberate choice to ignore the protections of the internal peer review process of the medical care professionals and to ignore the court's clear

---

[1] The court stated:

"She has a real interesting attitude toward confidentiality, wouldn't you agree? She receives these documents under an order of confidentiality, knowing they're confidential to begin with. She receives them on a very protected basis, then takes them and uses them, and then asserts confidentiality as to how she's used them. I have a little problem with that."

recognition of the importance of those protections. In short, the facts support the court's finding that plaintiff's actions were "egregious and willful in the extreme."

Nonetheless, dismissal is a "drastic" sanction to be reserved for the most severe violations of rules and court orders. *Pamplin v. Victoria*, 138 Or App 563, 567, 909 P2d 1245 (1996). Dismissal may be ordered only after the court explains the analytical process by which it concluded that dismissal is just in view of the other available sanctions. *Pamplin*, 319 Or at 437. After the court dismissed plaintiff's claim here, we decided *Klau-Med, Inc. v. Bodyworks Medical, Inc.*, 156 Or App 138, 964 P2d 1150 (1998), in which we explained that, to properly assess on appeal the propriety of a sanction of dismissal,

> "the trial court is required not only to make express findings that the penalized party willfully and knowingly disobeyed the court's orders but also to make express findings that lesser sanctions are not appropriate. * * * *Without an explanation as to why all other sanctions were not appropriate*, we cannot determine whether the trial court's decision was, under all the circumstances, just." *Id.* at 144-45 (emphasis added).

The court here stated that "[n]o lesser sanction [than dismissal] would adequately protect the discovery process and the integrity of the court." Although the court noted that plaintiff had not suggested any lesser sanction and, indeed, had asserted that no sanction should be imposed, the record also shows that, at the hearing, defendant proposed the alternative sanction of a monetary penalty. In light of that alternative, as well as by analogy the statutorily provided sanctions for discovery violations in ORCP 46, and keeping in mind that dismissal defeats a litigant's right to redress grievances in a court, *Stasch v. '69 Investment, Inc.*, 147 Or App 46, 52, 934 P2d 630 (1997), we conclude that the court's summary statement here does not adequately explain why less onerous sanctions would not be just under these circumstances. We therefore remand for reconsideration.

Plaintiff has also assigned error to the court's withholding of the portions of her medical staff file. Following an *in camera* inspection, the court held that the documents were

"not calculated to lead to the discovery of admissible evidence" and that, "[a]lternatively, even if those documents had marginal relevance * * * any such relevance would be clearly outweighed by a reasonable expectation of confidentiality." The documents were dated years before any of the events that plaintiff alleged in her complaints and related to her initial hiring and granting of staff privileges. We find no abuse of the trial court's discretion in denying discovery.

Plaintiff's final assignment of error is to the court's award of attorney fees for violation of the court order. Because of our remand for reconsideration, it follows that the award is vacated.

Vacated and remanded for reconsideration.